ENERGY ACTION EDUCATION FOUNDATION, et al., Plaintiffs,

v.

Cecil D. ANDRUS, Secretary of Interior, et al., Defendants.

Civ. A. No. 79–1633.

United States District Court, District of Columbia.

Sept. 17, 1980.

---

**92**

Joseph L. Rauh, John Silard, Jonathan D. Schiller, Washington, D. C., for plaintiffs.

E. Edward Bruce, Charles W. Findlay, III, U. S. Dept. of Justice, Lynn R. Coleman, Gen. Counsel, Dept. of Energy, Leo Krulitz, Sol., Dept. of the Interior, Washington, D. C., for defendants.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment or, in the Alternative, for a Preliminary Injunction. Defendants filed an opposition to the motion. After hearing the arguments of counsel for the parties, the Court took the matter under advisement.

## BACKGROUND

In 1953 Congress passed the Outer Continental Shelf Lands Act ("OCS Act") to provide for the leasing of off-shore lands by the federal government to private companies for exploration and development of oil and natural gas resources. This Act gave the Secretary of Interior the authority and discretion to administer leases on federal off-shore lands through the use of two different methods of competitive bidding: (1) a cash bonus bid basis with a royalty fixed by the Secretary of not less than 12½ per centum of the gross revenue of the lease and (2) a royalty rate bid with a fixed cash bonus payment.[1]

Congress, recognizing the need to reform the OCS Act to avoid excessive dependence on foreign nations for oil and gas supplies, to expand production on the outer continental shelf, to assure a fair return to the public, and to foster competition for the leases, amended the OCS Act in 1978.[2] The 1978 Amendments were designed to expedite oil and gas exploration and production for domestic use, to insure the public a fair and equitable return on these resources, to preserve and maintain competition, and to provide for a balance of development with protection of the environment.

One of the primary purposes of the new legislation is to achieve a superior bidding system through experimentation. The OCS Act, as amended in 1978, provides the Secretary of Interior with authority to grant to the highest responsible qualified bidder or bidders by competitive bidding, oil and gas leases on submerged lands of the outer continental shelf. The statute enumerates the bases on which the bidding, which shall be by sealed bid and at the discretion of the Secretary, shall occur. The bidding systems are:

1. Cash bonus bid with a fixed royalty at not less than 12½ per centum;

2. Variable royalty bid, with either a fixed work commitment or a fixed cash bonus as determined by the Secretary, or both;

3. Cash bonus bid or work commitment bid with a fixed cash bonus and a diminishing or sliding scale royalty of not less than 12½ per centum;

4. Cash bonus bid with a fixed share of net profits of not less than 30 per centum;

5. Fixed cash bonus with a variable net profit share;

6. Cash bonus bid with a fixed royalty at not less than 12½ per centum and a fixed per centum share of net profit of not less than 30 per centum;

7. Work commitment bid with a fixed cash bonus and a fixed royalty.

43 U.S.C.A. § 1337(a)(1)(A)–(G) (West Supp. 1979). Additionally, the statute provides

---

1. 43 U.S.C. § 1337(a) (1976).

2. 43 U.S.C.A. § 1331 *et seq.* (West Supp. 1979).

for bidding on the basis of any modification of the aforementioned bidding systems or any other systems of bid variables, the terms and conditions which the Secretary determines to be useful to accomplish the purposes and policies of the statute. 43 U.S.C.A. § 1337(a)(1)(H) (West Supp.1979).

From 1953 until the 1978 Amendments, almost all lease sales were conducted pursuant to the cash bonus-fixed royalty system. However, the royalty bid-fixed cash bonus bidding system was employed in lease sales in 1977 and the cash bonus-sliding scale royalty system was used in two lease sales in early 1978. Of the eight lease sales that have occurred since the passage of the 1978 Amendments, approximately one-half of the tracts have been offered pursuant to the standard cash bonus-fixed royalty system, and the other half by the cash bonus-sliding scale royalty system.

The OCS Act, as amended, further requires the Secretary of Interior to prepare and to maintain a comprehensive oil and gas leasing program to implement the policies of the Act. 43 U.S.C.A. § 1344(a) (West Supp.1979). The leasing program is to consist of a schedule of proposed lease sales which the Secretary determines will best meet national energy needs for the five-year period following its approval or reapproval, and is to reflect consideration of environmental, social, and economic concerns as well as the assurance of fair market value to the government on leased land. Congress also imposed the requirement that the Secretary apply alternative bidding systems, other than the cash bonus-fixed royalty, to not less than 20% and not more than 60% of the total area offered for leasing each year during the five-year period beginning September 1978. 43 U.S.C.A. § 1337(a)(5)(B) (West Supp.1979).

The five-year leasing program contemplated by the statute was approved by the Secretary of Interior in June 1980. The lease sale scheduled for September 1980 is the first sale to take place under the program, and will employ the first four enumerated bidding systems.

The plaintiffs in this case, consisting of nine consumer organizations, three private citizen-taxpayers, and two California government entities, filed this action in this court on June 22, 1979. The complaint names as defendants the United States, the Secretary of Interior, and the Secretary of Energy. Plaintiffs seek declaratory and injunctive relief to prohibit the defendants from conducting any future leasing pursuant to the OCS Act, until the Secretary of Energy has promulgated regulations governing use of all alternative bidding systems authorized by the Act, including systems allowing for the sharing of net profits. The plaintiffs further seek declaratory and injunctive relief to prohibit the further use of the cash bonus-fixed royalty bidding method, alleging that the use of this method does not comply with the intent of the OCS Act. The plaintiffs also seek an order by the Court directing defendants to review all existing leases and to take corrective action if such review reveals that the leases will not yield a fair return to the government.

On June 25, 1979, plaintiffs filed a motion for preliminary injunction to enjoin Lease Sale No. 48, which was to take place on June 29, 1979. Plaintiffs specifically sought to enjoin further lease sales in the absence of regulations for all the bidding methods contained in the OCS Act. Judge Aubrey E. Robinson denied the motion for preliminary injunction, ruling that plaintiffs had not shown a likelihood of success on the merits. The court found that the partial use of the cash bonus-fixed royalty system complied with the statutory requirement that a mix of that method along with other methods be used. Its use did not violate the purpose of the OCS Act. The court also found that defendants had not acted in an arbitrary or capricious fashion by failing to promulgate regulations for all the alternative bidding systems, in light of the complexity and sensitivity involved in the promulgation of the regulations. The Congressional oversight provision which is incorporated into the OCS Act led the court to find that there existed adequate safeguards against the improper use of bidding systems.

On two occasions the plaintiffs sought by motion to modify Judge Robinson's order:

first, to restrain defendants from awarding any leases under Sale 48 on a cash bonus-fixed royalty basis, and second, to restrain the acceptance of bids and the award of leases under Sale 48 because the bidding results demonstrated that acceptance would be contrary to the requirements of the OCS Act. The first motion was rendered moot and the second motion was denied.

The plaintiffs appealed to the United States Court of Appeals for the District of Columbia Circuit from the denials by Judge Robinson of their motion for preliminary injunction and motion for modification. Since Judge Robinson had based his decisions in part, upon his reading of the OCS Act amendments, the U. S. Court of Appeals undertook an examination of the meaning of the statute. In a unanimous opinion by the late Judge Leventhal, the Court of Appeals affirmed the orders of Judge Robinson.[3]

Judge Leventhal found that the real question before the Court was "whether the continued partial use of cash bonus-fixed royalty bidding—as planned for the near future by the Secretary—violates the statutory scheme." The Court upon analysis of the statute along with relative parts of the legislative history, concluded that it did not. The Court further discussed whether at that point in time the failure of defendants to promulgate all regulations for alternative bidding systems violated the OCS Act amendments. The Court stated that on the record before it, it could not say that the government's actions to date had run afoul of the legislative scheme. The Court specifically left open the question of whether at some point in time the Secretary's delay in issuing other regulations and in failing to experiment more widely among alternative bidding systems may constitute a violation of the OCS Act amendments. This is the issue before the Court at this juncture.

## DISCUSSION

### I. Plaintiffs' Contentions

Plaintiffs, in the instant motion, seek partial summary judgment or a preliminary injunction on the grounds that the failure of defendants to develop and implement regulations for all seven alternative bidding systems some two years after the enactment of the 1978 Amendments is violative of the OCS Act. They contend that not one single bidding system will be utilized in the three lease sales scheduled for 1980 that was not used prior to the 1978 Amendments and that every tract leased or proposed for leasing since September 1978 has followed the cash bonus bidding system. It is urged that defendants' failure to promptly promulgate regulations for all seven enumerated systems is not only an abuse of discretion but also a violation of the OCS Act in that the experimentation mandated by Congress is being frustrated.

Plaintiffs argue that the most important objective underlying the whole statute is the desire of Congress to try non-cash bonus bidding systems. They maintain, by reference to the statute and the legislative history, that Congress mandated the Secretary of Interior to use non-cash bonus bidding systems rather than cash bonus systems. It is only through non-cash bonus bidding, plaintiffs contend, that the public will achieve a principal goal of the 1978 Amendments; i. e., fair market value or a fair return on the leases.

Plaintiffs further argue that they, as well as Congress, wish to experiment with "profit share bidding" with a fixed cash bonus, a successful bidding system used by the State of California. 43 U.S.C.A. § 1337(a)(1)(E) (West Supp.1979). Plaintiffs suggest that a review of the eight sales conducted since September 1978 makes it amply clear that the Department of Energy has no intention of promulgating regulations for variable profit share bidding. Thus, they urge that the lease sales scheduled for September 1980 should be enjoined since defendants persist in utilizing bidding systems that neither assure a fair return nor foster competition.

### II. Defendants' Contentions

Defendants, in opposition to the motion, argue that the Department of Energy has

---

**3.** *Energy Action Educational Foundation v. Andrus* (D.C.Cir.1979) 631 F.2d 751.

issued regulations for four bidding systems since September 1978. These four systems, to be utilized in the September 1980 lease sales, are: (1) variable royalty bidding-fixed cash bonus; (2) cash bonus-fixed royalty; (3) cash bonus-sliding scale royalty; and (4) cash bonus-fixed net profit. Although defendants maintain that the OCS Act does not require the promulgation of regulations for every enumerated bidding system, defendants state that the Department of Energy is in the process of preparing regulations or the variable net profit share bidding system and the work commitment bid system options.

Defendants contend that even if it is found that regulations for each enumerated system are mandated, the pivotal question is whether the pace of issuing the regulations is in accordance with law. They maintain that the issuance of regulations complies with the statutory mandate and, more importantly, the OCS Act contains no deadlines for promulgation. Defendants also assert that the development of regulations have coincided well with their utilization. Defendants also contend that their conduct is in conformance with the statutory mandate as Congress did not intend to discourage bidding systems which contain cash bonus as a bid component.

### III. The Motion for Partial Summary Judgment

A motion for summary judgment places the burden on the moving party to establish that there is no genuine issue of material fact and that judgment should be granted as a matter of law. Plaintiffs contend that this Court should grant them partial summary judgment, finding that there is no dispute as to any material fact and that as a matter of law, the defendants' failure to develop regulations for all seven alternative bidding systems is a violation of the OCS Act.

The plaintiffs base their request for partial summary judgment on those portions of the OCS Act and its legislative history which authorize and encourage the promulgation of regulations for and the implementation of alternative bidding systems. Plaintiffs interpret the language and history of the OCS Act to mean that Congress intended the Secretary of Interior to use bidding systems other than cash bonus systems. In contending that Congress specifically sought the use of non-cash bonus systems to experiment and to determine which systems are best suited for lease sales, plaintiffs argue that defendants' failure to develop regulations for non-cash bonus systems demonstrates a refusal to experiment with statutorily required alternative systems. All parties agree that no one bidding system can be used prior to the promulgation of regulations for that system. Thus, plaintiffs assert defendants' failure to issue the necessary regulations precludes the use of the alternative bidding systems contemplated by Congress, thereby frustrating Congressional intent and violating the statute. Plaintiffs further read the legislative history to mean that regulations for all bidding systems must be promulgated before lease sales can proceed.

Plaintiffs cite the opinion of the Court of Appeals which states, "at some point in time the Secretary's delay in issuing profit-sharing regulations and in failing to experiment among alternative bidding systems more widely may constitute a violation of the OCS Act amendments," At 761, to argue that this is the point in time at which the Secretary is in violation of the Act.

Defendants contend that there is no timetable for promulgation of the regulations, and even if there is a timetable, the Secretary's present rate of promulgation is at a pace in accordance with the law. Defendants dispute plaintiffs' interpretation of the statute and legislative history arguing that no where is it mandated that the Secretary promulgate regulations for or use every bidding system contained in the Act. Furthermore, defendants argue that the Secretary has been granted by Congress wide discretion in the use of the bidding systems. Defendants contend and have produced evidence to support their position, that they have experimented with alternative bidding systems, through the past use of the cash

bonus-sliding scale royalty system, and will experiment with the cash bonus-fixed net profit share system in the September 1980 sale. Therefore, defendants deny that the absence of regulations for all bidding systems authorized by the OCS Act violates the statute and precludes the continuation of lease sales.

██ It is the opinion of this Court that there does exist a genuine issue as to whether the statute requires the Secretary to fully promulgate regulations for all bidding systems before leasing activity on the outer continental shelf can take place. Certainly, this is a material fact in dispute which precludes the grant of plaintiffs' motion for partial summary judgment. Accordingly, the motion for partial summary judgment will be denied.

## IV. *The Motion for Preliminary Injunction*

Plaintiffs seek, in the alternative, a preliminary injunction enjoining the September 1980 lease sales. Preliminary injunctive relief is an extraordinary equitable remedy. The law is well settled that the moving party has the burden of demonstrating that (1) he will suffer immediate irreparable injury if the relief is not granted; (2) he has a strong likelihood of succeeding on the merits; (3) a balancing of the equities and maintenance of the status quo favor relief and (4) the public interest will be favored by the grant of such relief. *Virginia Petroleum Jobbers v. Federal Power Commission*, 110 U.S.App.D.C. 339, 259 F.2d 921 (D.C.Cir. 1958). The elements will be discussed seriatim.

### Irreparable Injury

The plaintiffs contend that they will be irreparably harmed if the Court fails to enjoin the defendants from proceeding with the lease sales scheduled for September 1980 absent the full promulgation of regulations for and implementation of all the alternative bidding systems. At the heart of this injury, plaintiffs allege, is the cash bonus-fixed royalty system which, as employed by defendants in the past, will cause damage to plaintiffs for it fails to promote

proper competition and expeditious development of off-shore energy reserves. To support their arguments, plaintiffs refer to reports submitted in relation to past lease sales. These reports discuss how the cash bonus-fixed royalty bidding system operates and conclude that the system depresses production and competition as well as reduces fair return to the federal treasury. The plaintiffs also rely on reports and statistical data to support their contention that use of the cash bonus-fixed royalty system is designed to discourage the small bidder thereby decreasing competition and ultimately causing injury. Plaintiffs principally rely on the testimony of their expert, George Donkin, whose affidavit states that every sale in which the cash bonus system with a fixed-royalty at one-sixth ($\frac{1}{6}$) was used, produced a diminishing return to the federal government.

Plaintiffs expound on the negative aspects of the cash bonus-fixed royalty system but fail to demonstrate exactly how they are injured by the failure of defendants to promulgate *all* the regulations. Plaintiffs focus only on how the cash bonus-fixed royalty system is the least favorable system to the public interest and why regulations for and implementation of the variable profit share system will be most favorable.

██ Injunctions should not issue unless the threat of injury is imminent and well-founded and the injury itself would be incapable of being redressed after a final hearing on the merits. The Court finds that plaintiffs have failed to demonstrate the requisite irreparable injury to them in relation to the scheduled September 1980 sale. The cash bonus system with fixed royalty is not the exclusive method by which leases are being offered for sale. Moreover, the use of this system is consistent with the intent of Congress to experiment in order to obtain valid data for comparison with the performance of other systems.

### Likelihood of Success

Upon consideration of a motion for preliminary injunction, the Court need only

consider the likelihood of success on the merits, for adjudication of the merits must await a full hearing. In the instant motion, plaintiffs maintain that the ultimate question for resolution is whether the Department of Interior can continue in the third year after the new statute with exclusive use of cash bonus bidding and even refuse to promulgate the profit share bidding regulations which Congress most wanted to see. Defendants state the issue is whether the OCS Act requires the promulgation of regulations for each of the enumerated bidding systems and submit that even if this is true, the main inquiry is whether the pace of issuing regulations is in accordance with the law.

Plaintiffs rely on the legislative history and the statute to support their contentions. Their arguments, however, merely reflect the intent of Congress to have the Secretary of Interior retreat from the sole and exclusive use of the cash bonus-fixed royalty bidding system and to develop and use other systems which promise to meet the goals and policies of the 1978 Amendments. Plaintiffs urge the Court to find that Congress mandated the use of only non-cash bonus bidding systems in lease sales in order to achieve fair market value. Plaintiffs also appear to suggest that the amendments require bidding systems "other than cash bonus" rather than "in addition to cash bonus."

The OCS Act on its face authorizes four cash bonus bidding systems, including the traditional cash bonus-fixed royalty. There is evidence in the record tending to establish that leases offered under this traditional system may not produce a fair return and indeed may be anti-competitive; however, this evidence was within the knowledge of Congress before its enactment of the statute and the system was nonetheless expressly retained, albeit with limitations, for use during the five-year plan.

Plaintiffs do appear to categorize, as defendants contend, all cash bonus bidding systems under one rubric: cash bonus-fixed royalty. Enumerated in the OCS Act, however, are cash bonus systems with differing royalties which may result in a fair return as previous experience with the sliding scale royalty seems to indicate. It also appears clear from the OCS Act and the legislative history that the Secretary of Interior must report to Congress the *use* and *non-use* of the various bidding options. This may well indicate that even if regulations had been promulgated for all enumerated systems, it cannot be said that the Secretary is abusing his discretion solely because the variable net profit share bidding system is not being utilized in the September 1980 sale. Certainly, the evidence of record does not support such a finding.

Further, the Court is not persuaded that the statute and legislative history clearly prohibit leasing until all the enumerated bidding regulations are promulgated. On the contrary, the statute provides in pertinent part:

> After the leasing program has been approved by the Secretary, or after eighteen months following September 18, 1978, whichever first occurs, no lease shall be issued unless it is for an area included in the approved leasing program and unless it contains provisions consistent with the approved leasing program, except *that leasing shall be permitted to continue until such program is approved and for so long thereafter as such program is under judicial or administrative review pursuant to the provisions of this subchapter.* (Emphasis added).

43 U.S.C.A. § 1344(d)(3) (West Supp.1979). However, the Court is persuaded that under certain circumstances, the leasing program may be subject to further judicial scrutiny notwithstanding the above.

■ The sale which plaintiffs seek to enjoin constitutes the first sale scheduled under the five-year leasing program. The September sale utilizes over 50% of the enumerated bidding systems and, in addition, does not appear to violate the statutory limitations on the use of cash bonus-fixed royalty bidding. After full consideration, the Court finds and concludes that plaintiffs have failed to clearly demonstrate a strong likelihood of success on the merits.

*Balancing the Equities*

*The Public Interest*

Plaintiffs contend that the public interest would be best served by a delay in the lease sales in that injury to the public through reduced revenues and competition would be alleviated. Plaintiffs view any delay resulting from an injunction as necessarily being of short duration as defendants, in their view, have the necessary analyses to promulgate regulations for all systems but are purposefully "stonewalling" apparently to protect certain interests. Defendants, on the other hand, contend that the granting of a preliminary injunction would unduly delay lease sales and ultimately frustrate the overriding thrust of the entire OCS Act, which is to expedite development of the outer continental shelf. Defendants deny that the delay would be short and maintain that it would work to the detriment of the public interest. First, because of the complexities involved in promulgating regulations for the remaining bidding systems, the delay could be a year or more in length. Secondly, this delay would force the Secretary to compress the enjoined sales into a later period of the five-year plan. Thus, defendants argue there is a serious question whether bidders would have the resources to participate in sales appearing in such rapid succession, which in turn could result in declining production and an increased dependence on foreign oil and gas.

In striking a balance between these divergent views, the Court finds and concludes that defendants have not clearly demonstrated that more harm will result to them from a denial of the injunction than will result to defendants from its grant. Further, the Court is convinced that plaintiffs have not clearly demonstrated that the public interest will be served by the issuance of an injunction.

### CONCLUSION

Upon consideration of the pleadings, the motion for partial summary judgment or, in the alternative, for preliminary injunction, the opposition thereto, the memoranda of points and authorities submitted by the parties, the argument of counsel, the record, and the reasons stated herein, the Court finds and concludes that the motion of plaintiffs should be denied.

WHEREFORE, it is this 17th day of September, 1980,

ORDERED that the motion of plaintiffs for partial summary judgment or, in the alternative, for a preliminary injunction be and hereby is denied.